UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: FRESENIUS GRANUFLO/      )   MDL NO. 13-02428-DPW
NATURALYTE DIALYSATE            )
PRODUCTS LIABILITY LITIGATION   )

This Order Relates To:

JOSEPHINE ARBALLO,              )   CIVIL ACTION NO.
                                )   14-cv-10546-DPW
    Plaintiff,                  )
v.                              )
                                )
FRESENIUS USA, INC., ET AL.,    )
                                )
    Defendants.                 )

MEMORANDUM AND ORDER
June 30, 2015

Defendant Northridge Dialysis Center ("Northridge"), a California dialysis clinic, moves to dismiss claims against it by a California plaintiff, Josephine Arballo. Arballo moves to remand the entire case to California state court, and the Fresenius defendants ("FMCNA") seek to keep the case as part of this multi-district litigation ("MDL"), either through dismissal of the claims against Northridge or through severing and remanding the Northridge claims while maintaining the rest of the action here.

**I. BACKGROUND**

Arballo is the surviving spouse of Carlos Arballo ("the decedent"), who was receiving dialysis using Granuflo and/or

NaturaLyte. Shortly after a routine dialysis treatment at Northridge on April 16, 2012, the decedent went into cardiac arrest and died.

Arballo alleges that FMCNA was aware of the risks involved in the Granuflo/NaturaLyte products, specifically the risk of metabolic alkolosis due to "confusion" by clinic technicians who were not properly accounting for the higher amount of bicarbonate produced by these products. Compl. ¶¶ 63-75. She alleges that FMCNA was aware of this for a period of time, during which it did not notify outside healthcare providers of these risks. *Id.* ¶ 76. She asserts that FMCNA ultimately issued a two-page memo on March 29, 2012 to healthcare providers (such as Northridge), titled "Important Prescribing Information: NaturaLyte Liquid and GranuFlo Acid Concentrate Bicarbonate Alkolosis." *Id.* ¶ 78. While this memo did not address the findings FMCNA had made specifically, it stated that "[t]otal buffer should be considered in addition to bicarbonate as part of writing the dialysis prescription." *Id.* Arballo alleges that "[o]n March 29, 2012, the FDA issued a Class I Recall of GranuFlo and NaturaLyte products due to the prevalent increased risk of high serum bicarbonate levels which can cause and/or contribute to metabolic alkalosis."[1] *Id.* ¶ 79.

---

[1] According to the Master Complaint in this MDL, March 29, 2012 was the date that the FDA reported FMCNA's voluntary Class I

The complaint in this case was filed by Arballo individually and on behalf of her deceased husband's estate in the Superior Court of California in Los Angeles in September 2013 against FMCNA, Northridge Dialysis Center, and two individual defendants, Ben Lipps and Walter Weisman, alleging claims for negligence, strict liability, fraudulent concealment and deceit, and wrongful death, among others.[2] FMCNA removed the case to the Central District of California in November 2013. Arballo moved to remand for lack of jurisdiction, arguing that there was a lack of diversity because her claims against Northridge and other individual California defendants were cognizable under California law. Northridge filed a motion to dismiss. The Judicial Panel on Multidistrict Litigation

---

recall of GranuFlo and NaturaLyte. June 22, 2012 is described in the Master Complaint as the date that the FDA concluded that there was a reasonable probability that the use of NaturaLyte and GranuFlo could cause serious adverse health consequences and the date on which the FDA itself classified the recall as a Class I recall. The Master Complaint describes Class I recalls as "the most serious recalls . . . for dangerous or defective products that predictably could cause serious health problems or death." *Id.* ¶ 214. The Master Complaint also alleges that, according to the FDA, "the seriousness of this recall requires 100 percent effectiveness checks and there must be verification that every consignee has been notified of the recall and appropriate action has been taken." *Id.* ¶ 213.

[2] Northridge notes that in an earlier action against only FMCNA, FMCNA had removed the case to federal court and Arballo had moved to dismiss without prejudice. She then added the Northridge and other individual California defendants in this second action. Northridge suggests that the addition of the California defendants was done intentionally to defeat diversity and prevent removal.

("JPML") transferred this action to the MDL before the outstanding motions were resolved in the Central District of California.

On January 2, 2015, I issued a decision determining the citizenship of various parties and the viability of certain claims against individual defendants in cases arising from California. *In re Fresenius GrauFlo/NaturaLyte Dialysate Products Liability Litig.*, 2015 WL 44589 (D. Mass. January 2, 2015). Specifically, I held that FMCNA is a citizen of Massachusetts, that Lipps is a citizen of Nevada, and that Weisman was fraudulently joined and should be dismissed. *Id.* The January 2, 2015, Memorandum and Order did not directly govern this case, but the principles it applied were clearly applicable in this litigation.[3] I now must consider the claims against Northridge, the sole non-diverse party remaining in this action.

## II. ANALYSIS

Before me are (a) Arballo's motion to remand this case to California state court, (b) Northridge's motion to dismiss the claims against it under Fed. R. Civ. P. 12(b), and (c) a motion by FMCNA, in the alternative, to sever the claims against

---

[3] The parties here entered a stipulation of dismissal of the claims against Walter Weisman with prejudice on February 12, 2015.

Northridge from those against FMCNA, which would send only the claims against Northridge back to California state court. Arballo's motion to remand is based on the asserted lack of complete diversity under 28 U.S.C. § 1332. *See Caterpillar, Inc.* v. *Lewis*, 519 U.S. 61, 68 (1996).

The four counts pled by Arballo that concern Northridge are Count 7, Negligence; Count 8, Wrongful Death; Count 9, Elder Abuse; and Count 10, Negligent Performing of Undertaking. Arballo argues that the joinder of Northridge in this case is non-fraudulent, meaning that she states a viable cause of action against Northridge, and that this defeats diversity.

### A. *Failure to State a Claim against Northridge*

The doctrine of fraudulent joinder provides that removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant. *Universal Truck & Equip. Co., Inc.* v. *Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014).[4]

---

[4] I note that there is caselaw suggesting that a party alleging fraudulent joinder, in whatever form, bears the burden of demonstrating fraudulent joinder by clear and convincing evidence. *Mills* v. *Allegiance Healthcare Corp.*, 178 F.Supp.2d 1, 4 (D. Mass. 2001) (adopting the test articulated in *Whitaker* v. *Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)). This case illustrates the overbreadth of such a standard of proof. As *Whitaker* observes, what has been styled "fraudulent

5

This section addresses whether Arballo has stated a claim against Northridge, an issue briefed both in Arballo's motion to remand as well as Northridge's motion to dismiss. The motion to dismiss moves under both Rule 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief can be granted. Typically, jurisdictional issues should be determined before addressing the merits of additional defenses. *See Donahue* v. *City of Boston*, 304 F.3d 110 (1st Cir. 2002). These two inquiries, however, are intertwined here. Resolving whether Arballo's claims against Northridge are viable on the face of her complaint — a matter typically for a 12(b)(6) motion — is necessary for me to determine whether I have subject

---

joinder" can be demonstrated by a showing "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court." 261 F.3d at 207 (quoting *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459, 460 (2d Cir. 1998). The first showing sounds in the tort of fraud or deceit for which the standard of proof is traditionally "clear and convincing." *See, e.g., Northwestern Mut. Life Ins. Co.* v. *Nelson*, 103 U.S. 544 (1880)("evidence of fraud must be clear and convincing."); *Steadman* v. *S.E.C.*, 450 U.S. 91 (2981)(noting that "[a]t common law, it was plain that allegations of fraud had to be proved by clear and convincing evidence."). By contrast, the second showing is that traditionally used to evaluate a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. It makes no sense to talk about burdens of proof in connection with the second showing. Consequently, I will address the Northridge motion to dismiss initially before determining whether further analysis under some rubric other than Rule 12(b)(6) is appropriate.

6

matter jurisdiction over this case through the doctrine of fraudulent joinder.

1.  Statute of Limitations

Northridge contends that the negligence claims against it are not viable because an affirmative defense based on the statute of limitations can properly be resolved on the pleadings in this case. Questions of timeliness are often fact-intensive questions that are "more appropriately applied at the summary judgment or trial stage of litigation." *Cervantes* v. *City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). A complaint is not properly dismissed at this stage "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc.* v. *United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

California generally follows the discovery rule, that a cause of action does not accrue until the injury has been discovered. *Fox* v. *Ethicon Endo-Surgery, Inc.,* 110 P.3d 914, 920 (Cal. 2005). While this is a background rule for California statutes of limitation generally, California has made the role of this rule explicit in a statute of limitations specifically for negligence claims against health care providers. California Code of Civil Procedure § 340.5 states:

> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action

7

> shall be three years after the date of injury or one
> year after the plaintiff discovers, or through the use
> of reasonable diligence should have discovered, the
> injury, whichever occurs first.

This statute defines "health care provider" as "any clinic, health dispensary, or health facility licensed pursuant to Division 2 of the Health and Safety Code." Arballo does not dispute that an outpatient dialysis clinic qualifies as a health care provider under California law. Cal. Health & Safety Code § 1200.

The effect of the two time limits in the statute is that the statute of limitations for negligence claims is one year running from discovery of the injury, with an outer limit of three years after the date of the injury itself. Under California law, there is no independent "tolling" of the one-year statute of limitations, such as through fraudulent concealment, although the running of the three-year limitations period at the outer bounds of this rule can be tolled. *See Sanchez* v. *South Hoover Hospital*, 553 P.2d 1129, 1131 (Cal. 1976). The outer three-year limit is not implicated here because this action is plainly brought within the three-year period; consequently, I address the one-year statute of limitation and the question when Arballo discovered or should have discovered the injury.

Discovery of the injury is not restricted to awareness of the actual harm suffered — here, the decedent's death — itself. Discovery within the meaning of the statute requires knowledge of the harm suffered as well as that the harm was caused by wrongdoing. Under this rule, a cause of action accrues "when the plaintiff has some reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox*, 110 P.3d at 917.

The "knowledge" necessary for the cause of action to accrue may be actual, or it may be presumptive. *Sanchez*, 553 P.2d at 1135. The California Supreme Court has expressed the relevant principal as being that "when the plaintiff has notice or information of circumstances to put a reasonable person [o]n inquiry, or [h]as the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run." *Id.*

California law places certain pleading requirements on plaintiffs who seek to rely on the discovery rule for determining the time when their cause of action accrued. "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of

9

discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 110 P.3d at 921; *but cf. Cal. Sansome Co.* v. *U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995)("There is no requirement that the plaintiff specifically allege when the cause of action accrued.").

The burden is on the plaintiff to "show diligence" in her allegations, not through mere conclusory statements. *Fox*, 110 P.3d at 921. A plaintiff who suspects an injury may have been wrongfully caused must reasonably investigate all potential causes of that injury, and:

> [i]f such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.

*Id.* at 921.

I agree with Northridge's contention that Arballo was on notice of the relevant harm as of April 16, 2012, the date that her husband went into cardiac arrest after dialysis treatment and died. Northridge contends that Arballo was also on notice of potential wrongdoing as of that date, because any reasonable person would attempt to investigate the reason for her husband's sudden death. Given that Arballo's complaint contains the

10

allegation that the FDA issued a recall for GranuFlo/NaturaLyte on March 29, 2012,[5] Northridge argues that any reasonable investigation as of April 16, 2012 would have uncovered facts supporting the cause of action here and that therefore the one-year statute of limitations properly runs from April 16, 2012.[6]

Arballo counters that she has properly asserted that she did not and could not have discovered or suspected the causal connection between her husband's death and the use of GranuFlo/NaturaLyte, noting that the defendants, including Northridge, concealed the information from her that prevented her from suspecting the casual nexus. She cites two paragraphs in her complaint that do make these assertions, but only in the most conclusory manner:

> 85. The discovery rule applies to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence, should have known of the existence of her claims

---

[5] The complaint notes March 29, 2012 as the date of the FDA recall. For purposes of this order, I take this allegation to be true. I note, however, that based on other information before me in this MDL, I am aware that March 29, 2012 is the date of a voluntary recall by FMCNA and that June 22, 2012 is the date of the mandatory Class I recall issued the FDA. *See supra* note 1. My analysis here, however, is not affected by the three-month difference between these two dates, because even the June date is outside the one-year statute of limitations.

[6] Arballo's argument that courts do not regularly run the one-year statute of limitation from the date of treatment is correct but it misses the mark. Northridge does not contend that the statute of limitations should run from April 16, 2012, because that is the date the GranuFlo and/or NaturaLyte were administered, but rather because that was the date on which the decedent died.

11

> against all Defendants. The nature of Decedent's injuries, death and subsequent damages, and their relationship to the use of GranuFlo and/or NaturaLyte, was not discussed, and through reasonable care and diligence could not[] have been discovered.
>
> 86. Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Plaintiff the nature of the Decedent's injuries and the relationship and connection between Decedent's injuries and subsequent death and Defendants' tortuous conduct.

Arballo does not allege when she discovered the injury in this case, and while she asserts that she could not have discovered the injury earlier, she does not provide any concrete explanation why this is so. Although she makes an assertion that Northridge fraudulently concealed information about the connection between GranuFlo/NaturaLyte, she also alleges a public recall of these products by the FDA, Compl. ¶ 80. Further, as noted above, while fraudulent concealment tolls the statute of limitations in some situations, *see e.g. Grisham* v. *Phillip Morris USA, Inc.*, 151 P.3d 1151, 1159 (Cal. 2007), the one-year statute of limitations in Cal. Code Civ. P. § 340.5 already includes a requirement of discovery and is not subject to any additional tolling. *Sanchez*, 553 P.2d at 1131.

Arballo's allegation concerning the FDA recall undercuts her statement that she could not have discovered the injury as of the date of her husband's death if she had conducted a reasonable inquiry. The submissions concerning discovery fail

to establish that she could not have discovered the injury earlier.

While a complaint should not be dismissed for inadequately pleading facts concerning the discovery rule when an amendment can remedy the shortcoming, *Fox*, 110 P.3d at 922, in this case the complaint itself precludes cure by amendment.[7] The claims of negligence that underlie Counts Seven, Eight, and Ten therefore fall outside of the statute of limitations and must be dismissed.

### 2. Elements of Elder Abuse

Northridge argues that Arballo has not adequately pled in Count Nine a cause of action for elder abuse under California Law. California's Elder Abuse Act, Cal. Welf. & Inst. Code §

---

[7] Arballo included a contingent motion to amend in her response to the motion to dismiss, but at oral argument on this motion, counsel indicated that Arballo would not be moving to amend further, agreeing that this was the "best and final" iteration of the pleading such that plaintiff was "willing to stand on the complaint." Transcript of Oral Argument at 25-26, *In re Fresenius*, Civil Action No. 13-02428, Dkt. No. 595 (March 28, 2015). Plaintiff's counsel agreed with me when I said that I would decide this case on the basis of this complaint, not on the basis of a further filing that might be submitted. *Id.* I note that ordinarily if a party was dissatisfied with the adverse determination of this pleading issue, under California law I would be obligated to grant leave to amend "if the plaintiff shows there is a reasonable possibility [that the] defect . . . can be cured by amendment." *Fox*, 110 P.3d at 922. Here, Arballo has not made any offer of the way in which she would amend her complaint let alone that any amendment has a reasonable possibility of curing the defects identified. Rather, she has waived whatever right she might have to replead.

15600 et seq., provides a statutory civil cause of action against a defendant liable for physical abuse or neglect of an elder. This statute provides for attorneys' fees and costs, damages, and punitive damages, "[w]here it is proven by clear and convincing evidence that a defendant is liable for physical abuse . . . or neglect . . . and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse." *Id.* § 15657. An "elder" for purposes of this statute is any person residing in California who is sixty-five years of age or older. *Id.* at § 15610.27. "Abuse of an elder" means either (a) "physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering," or (b) "deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." *Id.* at § 15610.07. In her motion, Arballo points to subsection (b) as the relevant provision. A claim under the Elder Abuse Act, like all statutory causes of action, must be pleaded with particularity. *Covenant Care, Inc.*, v. *Superior Court of Los Angeles*, 86 P.3d 290, 301 (Cal. 2004).

Arballo's complaint alleges that the decedent was an "elder" within the meaning of the statute, Compl. ¶ 133, and that Northridge "had an ongoing duty to protect Decedent from health and safety hazards associated with the use of GranuFlo

14

and/or NaturaLyte products," *id*. at ¶ 134. She alleges that Northridge had notice and knowledge of the dangerous propensities and increased risks of fatal cardiac events associated with use of the products, that Northridge had the ability to mandate proper instruction to its staff about use of these products, *id*. ¶ 135, that Northridge failed to warn the decedent of the increased risk and that it did not take the necessary precautionary measures that a reasonable entity in the chain of distribution would be expected to take, *id*. ¶ 136. She alleges that Northridge "acted in a malicious, wanton, reckless and fraudulent manner, with an intentional and conscious disregard for the rights, safety and health of Decedent," *id*. ¶ 136, and that this conduct resulted in the decedent suffering fatal cardiac injuries. *Id.* ¶ 137.

Northridge first argues that Arballo cannot establish the element of physical custody, noting that abuse is defined as "deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering," Cal. Welf. & Inst. Code § 15610.07(b), and neglect is defined with reference to the "failure of any person having the care or custody of an elder . . . ," *id.* at § 15610.57. Northridge draws on these definitions to argue that Arballo must allege that it had "care and custody" of the decedent, and that because it is an outpatient dialysis center it did not have such

15

custody. Northridge's reading of the statute, however, is incorrect. "Care custodian" is specifically defined as an employee or administrator of a variety of public or private facilities or agencies, including "clinics". Cal. Welf. Inst. Code § 15610.17(b). The list of possible care custodian employers also includes numerous non-residential facilities, including adult day health care centers and adult day care, *id.* at (e), and camps, *id.* at (h). The statute plainly extends beyond residential facilities or facilities that provide exclusive care for the elder.

Northridge's next argument is that Arballo has not, and cannot, plead facts that demonstrate the requisite mental states, *id.* at § 15657, nor can her allegations amount to the types of "egregious abuse" that the Elder Abuse Act is directed against, *Delaney* v. *Baker*, 971 P.2d 986, 993 (Cal. 1999). Section 15657.2 of the Elder Abuse Act provides that a cause of action for injury against a health care provider, like Northridge, is not subject to the statutory cause of action for elder abuse if the allegation is based on "professional negligence." The elder abuse statute protects health care providers from simple or gross negligence. *Covenant Care*, 86 P.3d at 298. A heightened state of culpability, captured by the requirement in Cal. Welf. & Inst. Code § 15657 that a plaintiff

16

must show recklessness, oppression, fraud or malice, is required. *See also Delaney*, 971 P.2d at 991.

Recklessness under this statute "refers to a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur . . . Recklesness, unlike negligence, involves more than 'inadvertence, incompetence, unskillfulness, or a failure to take precautions' but rather rises to the level of a 'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it." *Id.* at 991 (quoting Rest.2d Torts, § 500). Northridge contends that the allegations in the complaint, namely that FMCNA circulated internal memoranda describing the problems with GranuFlo and NaturaLyte and withheld that information from clinics, health care providers, and end users, precludes a finding of culpable mental state by Northridge. The only allegation that touches on Northridge's knowledge in any detail is that on March 29, 2012, Northridge received a two-page memo that "merely stated" that "[t]otal buffer should be considered in addition to bicarbonate as part of writing the dialysis prescription." Compl. ¶ 78. The complaint notes that the memo did not address the findings by FMCNA or any specific results. *Id.*

Arballo adds in a conclusory manner that Northridge had "notice and knowledge" of the dangers involved in using these products, *id.* ¶ 135, and that Northridge acted in a "malicious, wanton, reckless and fraudulent manner," *id.* ¶ 136. The inclusion of these state-of-mind terms, without detailing facts that support such a possible finding of a culpable state of mind, is insufficient to raise negligence or misconduct to the level required to trigger liability under the Elder Abuse Act. *Carter* v. *Prime Healthcare Paradise Valley LLC*, 129 Cal.Rptr.3d 895, 906 (Cal. Ct. App. 2011)("plaintiffs contend their allegations the Hospital acted 'recklessly' or 'fraudulently' suffice to cause 'the acts to rise to the level of neglect' under the Elder Abuse Act. We disagree. When we review a ruling on a demurrer, we do not assume the truth of contentions or conclusions of fact or law, such as those contained in plaintiffs' pleadings.")

Arballo does not allege facts that would plausibly make out the requisite mental states that are essential to this statutory cause of action. At most, in the light most favorable to the plaintiff, the complaint could be read to say that the March 29, 2012 memorandum put Northridge on notice that there may be some issue with the way dialysis prescriptions concerning GranuFlo and NaturaLyte had previously been written. There is no allegation that Northridge was involved in prescribing dialysis.

Not acting on that notice by inquiring of the prescribing physician may be negligence, but the facts do not satisfy the heightened intent requirements that are part of the Elder Abuse Act. Especially given the importance of particularized pleading under this statute, *see Covenant Care*, 86 P.3d at 301, Arballo's conclusory statements are insufficient to make out this element.[8]

### B. *Dismissal for Failure to State a Claim*

The only causes of action alleged against Northridge are negligence-based claims and elder abuse. Neither states a viable cause of action under California law. I therefore conclude that the Northridge case was fraudulently joined in this action because the complaint fails to demonstrate that

---

[8] FMCNA makes the additional argument that Arballo has failed to state a claim for neglect. A civil action for elder abuse is permitted for physical abuse, intentional wrongdoing defined within the statute and not at issue in this case, or for neglect. Neglect in the Elder Care Act is defined in general terms as the "negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." Cal. Welf. & Inst. Code § 15610.57. The California Supreme Court, in applying this standard to medical service providers, clarified that neglect "covers an area of misconduct distinct from 'professional negligence.'" *Covenant Care*, 86 P.3d at 296. Instead, "the statutory definition of neglect speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." *Id*. (emphasis in original). Under this definition of neglect within the Elder Abuse Act, providing dialysis treatment even without checking first with a prescribing physician to see if the physician may want to change the prescription, cannot lead to a claim of elder abuse of neglect under this statute. Arballo's complaint therefore does not state a viable cause of action for elder abuse.

19

there can be any recovery under the law of California for the claims against Northridge.

### III. CONCLUSION

For the reasons discussed more fully above, I GRANT Defendant Northridge's Motion to Dismiss (Doc. No. 16), and consequently under the circumstances, I DENY as MOOT the motion by Defendant FMCNA to Sever (Doc. No. 55); having done so I DENY Plaintiff's Motion to Remand to State Court (Doc. No. 20).

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE